### ENTERPRISE MFG. CO. OF PENNSYLVANIA v. BENDER et al.

(Circuit Court, N. D. Ohio, E. D. October 12, 1906.)

No. 6,853.

TRADE-MARKS AND TRADE-NAMES—UNFAIR TRADE—REPAIRS FOR UNPATENTED MACHINE.

Complainant manufactured and sold an unpatented meat chopper called the "Enterprise," which name was registered as a trade-mark, and also parts for replacing those that became worn which were marked with complainant's name. Defendants also made such replacing parts, selling them in packages marked to show for what machine they were made and by whom, but the parts themselves were not identified by any mark. Held, that defendants, while having the right to make and sell the parts, were not entitled to do so without clearly marking the same to prevent their being mistaken by retail purchasers for those made by complainant for its own machines.

[Ed. Note.—For cases in point, see vol. 46, Cent. Dig. Trade-Marks and Trade-Names, § 86.

Unfair competition, see note to Scheuer v. Muller, 20 C. C. A. 165; Lare v. Harper & Bros., 30 C. C. A. 376.]

In Equity.

Howson & Howson, for complainant.
Thurston & Woodward, for defendants.

TAYLER, District Judge. The bill of complaint in this case charges the defendants with unfair competition in trade, arising out of the sale of meat chopper parts, and asks for an injunction and an accounting. A stipulation has been entered into, setting out the facts in the case, and the question becomes purely one of law. It appears that

the complainant has been, for a great many years, manufacturing what is known as the "Enterprise Meat Chopper." The name "Enterprise" is registered as a trade-mark, but there is no patent on the machine. No one else is engaged in the manufacture of a machine designated "Enterprise" meat chopper. The principal wearing parts of the machine are the knife and the plate against which it revolves. These parts, as manufactured by the complainant, for the "Enterprise" meat chopper, are marked—the plate with the words "Enterprise Mfg. Co. Warranted Steel," and the knife with similar identifying language. The defendants manufacture a knife and plate for "Enterprise" meat choppers; that is to say, for the meat choppers made by the complainant. The plate and knife are of the same general shape and appearance as the complainant's, but the plate is marked "Warranted Steel" at the place where the complainant has the inscription "Enterprise Mfg. Co.," and also a duplication of the inscription "Warranted Steel" at the place where the complainant marks its plate "Warranted Steel." There is no mark at all on the knife made by the defendants. The defendants' knives and plates are put up in packages, each of which is labeled "Repair Parts for Enterprise Meat Choppers Manufactured by The Giant Lock Co., Cleveland, Ohio."

It appears in the agreed statement of facts that complaint has been made by users of Enterprise meat choppers that the knives and plates made by other persons than the complainant are unsatisfactory, and not of the quality of those which the complainant makes; and that such unsatisfactory knives and plates were supposed by the users to be of the manufacture of the complainant. In this state of facts, the court is asked to enjoin the defendants from furnishing knives and plates to be used in Enterprise meat choppers, unless they clearly designate on the knives and choppers the fact that they are made by the defendants. It seems to me that the prayer to this effect ought to be granted. Undoubtedly the user of Enterprise meat choppers will usually, if not always, presume, in the absence of knowledge to the contrary, that knives and plates for Enterprise meat choppers are manufactured by the manufacturer of Enterprise meat choppers. Undoubtedly the defendants have a right to make these parts, but they ought not to be permitted to so make them as to induce users of them to believe that they are made by the complainant. The ease with which these parts might be stamped by the defendants, and the inexpensiveness of such work, naturally raise the question why the defendants do not so mark them as the complainant marks its similar parts. The answer to that, in argument, is that dealers purchasing repair parts for Enterprise meat choppers do not desire the name of the manufacturer to appear on the parts, as they do not desire the name of the manufacturer to appear on many other things which dealers sell; that the retail purchaser, having used a certain article identifiable by the name of its manufacturer marked on it will, when he has occasion to buy another of the same kind, insist upon having the same thing. That almost concedes away the whole case. So much being admitted, it would seem to be but a step further, and somewhat more reasonable, to assume that the dealer did not want the name "Enterprise Mfg. Co." inscribed on those parts,

or the name of any other manufacturer inscribed on them, so that the purchaser, who was the owner of an "Enterprise" meat chopper, when he bought the knife and plate, would not know that the knife and plate were not of the manufacture of the Enterprise Manufacturing Company. Cases of this peculiar character are rare. Nothing exactly like it has been cited by counsel. An examination of two or three will serve to disclose the principle that ought to control in such a case.

In Flagg Mfg. Co. v. Holway, 178 Mass. 83, 59 N. E. 667, complainants were the first to market a zither of particular shape and arrangement of keys. Defendant subsequently came upon the market with a zither identical with plaintiff's in shape and construction. No infringement of any patent, trade-mark or name was claimed, nor was there present any simulation of package or wrapper. The confusion arose merely because plaintiff's zither was well known by reason of its distinctive shape and construction, that fact being sufficient to cause defendant's zithers to be bought as and for the plaintiff's. The court held that, by reason of the absence of a patent, plaintiff could claim no monopoly upon the zithers, and defendant had a perfect right to make and sell them; but it was further held (Holmes, C. J.) that "the only thing he [the defendant] has not the right to steal is the good will attaching to the plaintiff's personality," and that this should be guarded by requiring the defendant's zithers to be clearly marked, so that they would indicate unmistakably that they were the defendant's and not the plaintiff's goods. The decree enjoined the defendant from selling or offering for sale zithers like that made by the plaintiff, unless clearly marked to show that they were the product of the defendant and not that of the plaintiff.

In the case of Deering Harvester Co. v. Whitman & Barnes, 91 Fed. 376, 33 C. C. A. 558, an attempt was made to enjoin the defendants from making parts for use in complainant's harvester, giving those parts numbers and letters similar to those used by the complainant for its parts. The court below refused the injunction; but it appeared that the parts in that case were plainly labeled, showing them to be not those of the complainant's manufacture, and hence no one was misled. The chief contention in that case was that the defendants used certain symbols to designate the several parts and the place where they were to go, being the same symbols as those used by the complainant. The court disposed of that adversely to the complainant, and also made the following observation:

"Neither does the evidence justify any relief upon the ground of unfair trade. The appellees have affixed to the parts made by them for use in Deering machines the same letters and numerals as those affixed upon the same parts by the Deering Company. This they have a right to do. These parts are open to the manufacture of all. The letters and numerals affixed, being only for the purpose of defining kind, shape, size, and place, may be rightly used by any one for the same purpose. These parts made by appellees have been plainly advertised by catalogue and label as of their own manufacture, and their whole course of dealing, as shown by this evidence, has been such as to mislead no one into buying their product as that of the appellants."

If the knives and plates in the present case were plainly advertised by label as of the manufacture of the defendants, a different case would appear from that which is now presented. If it were impracticable to stamp these parts, then it would be sufficient to label them by some attached tag. Surely the defendants would be put to no more expense or trouble than that to which the complainant is now subjected, if they suitably inscribed their parts for the Enterprise meat chopper. The case cited by counsel for the complainant in their brief, the original report of which is not available, is Neostyle Mfg. Co. v. Elliam's Duplicating Co., 21 R. P. C. 185. In that case, the plaintiff sold a duplicating machine under the name of "Neostyle," and defendants sold an ink, adapted and intended for use in plaintiff's machine, calling it "Ink for the Neostyle." Plaintiff sought to restrain the sale, but it was held that the defendants had a perfect right to sell ink for the Neostyle, and to call it so, so long as they did so under their own reputation; but held further, however, that it was the defendants' duty to clearly mark their product with their own name. It appearing, therefore, that users of Enterprise meat choppers who are required to buy knives and plates to replace those originally furnished with the device are not only likely to be, but frequently are, as shown by the proof, led to believe that the replacing parts are manufactured by the complainant when they are not, it is a violation of the manifest duty of the manufacturers of such parts designed and sold for use in complainant's machine to fail to so stamp or mark them as to preclude the danger of such mistake being made.

Decree for an injunction may therefore be entered in accordance with the prayer of the bill. I see no reason why an accounting should be had.