KEYSTONE TYPE FOUNDRY v. PORTLAND PUB. CO.

(Circuit Court of Appeals, First Circuit.　March 10, 1911.)

No. 907.

TRADE-MARKS AND TRADE-NAMES (§ 75*)—"UNFAIR COMPETITION."

The basis of an action for unfair competition is fraud or deceit, inducing the public to believe that defendant's goods are those of complainant; and where the likeness is in the goods themselves, because of the copying of the design of complainant's article, which is unpatented, and there is no attempt to deceive purchasers with respect to the manufacturer, there is no ground on which a court of equity can grant an injunction.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. § 86; Dec. Dig. § 75.*

Unfair competition in use of trade-mark or trade-name, see notes to Scheuer v. Muller, 20 C. C. A. 165; Lare v. Harper & Bros., 30 C. C. A. 376.]

Appeal from the Circuit Court of the United States for the District of Maine.

Suit in equity by the Keystone Type Foundry against the Portland Publishing Company.　From a part of the decree (180 Fed. 301), denying complainant certain relief, it appeals.　Affirmed.

Ernest W. Bradford (Wilford G. Chapman, on the brief), for appellant.

Venable, Baetjer & Howard, for appellee.

Before COLT and LOWELL, Circuit Judges, and ALDRICH, District Judge.

LOWELL, Circuit Judge.　The amended bill in equity set out that the complainant, hereinafter called the "Foundry," at great expense procured the design of a certain type or type face, to which it gave the name of "Caslon Bold," and that it spent a large sum in advertising this type, which by this design became known as the product of its foundry; that it offers this type for sale only for printing purposes, and not for the purpose of being copied; that this is understood by printers.　The bill further set out that the defendant, hereinafter called the "Publishing Company," was engaged in the manufacture and sale of type having the Foundry's "Caslon Bold" design, which type was cast in matrices made from the Foundry's original type; that the Publishing Company, having wrongfully and surreptitiously, with intent to deceive, obtained and copied forms of the Foundry Company's "Caslon Bold" type, sold its copies of this type under that name, though of inferior quality, at reduced rates, by reason of having had no original expense about the designing and advertising.　Deception of purchasers was alleged.　The bill prayed an injunction restraining the Publishing Company—

"from advertising said type-face design by reproducing or copying the same in any printed matter, or appropriating, reproducing, or copying by any method or means said original type face known in your orator's advertising as 'Caslon Bold,' or from making or selling or offering for sale type having the face design known as 'Caslon Bold' as aforesaid, or any copy thereof, and

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

from in any way using or appropriating for its use the name 'Caslon Bold' for type, and from in any way interfering with the business of your orator in the manufacture and sale of type having said original face design."

The jurisdiction of the Circuit Court was not invoked by reason of an alleged infringement of a statutory trade-mark, but only because of the diverse citizenship of the Foundry and the Publishing Company.

The Publishing Company demurred to so much of the bill as alleged the manufacture and sale of "Caslon Bold" type face "otherwise than as under the name of 'Caslon Bold' or as type manufactured by the complainant," setting forth as ground of demurrer that the complainant had neither patent nor trade-mark. The demurrer was overruled, with leave to the respondent to raise at the final hearing all questions raised by the demurrer. The amended answer denied the complainant's ownership of the type face, alleged that "Caslon Bold" was a generic term "incapable of exclusive appropriation by any one," and denied fraud or deceit on its own part. Evidence was taken, and the Circuit Court in its final decree enjoined the Publishing Company from using the name "Caslon Bold" to designate its type, but dismissed the bill in so far as it sought to restrain the Publishing Company from copying the Foundry's type and selling the copy. The Foundry appealed to this court.

In substance, the case is this: The Foundry designed a type which the printing and publishing trades have found desirable. This designing involved expense, and the type so designed became well known to printers and to publishers under the name "Caslon Bold." The former were largely guided in their choice by the approval of the latter, while the publishers rested their approval upon the ultimate approval of the general public. The Publishing Company imitated this type. The Foundry treats the case as one of unfair competition, and likens the shape and design of "Caslon Bold" type to the mark or label which is used to designate an article as the make of a particular manufacturer. It contends that this is an ordinary case of unfair competition.

So far as this case is concerned, however, the type face is in effect the type itself. The expense incurred by the Foundry was concerned only with the design, not with the composition of the material, or with the shape of the metal body which carried the face. The expense of advertising was the expense of advertising the type face.

"The advertising necessary to market a new type face and put it fairly before the printers of the country calls for the best efforts of expert printers and advertisers." Complainant's expert Weatherly, A. 1403, Rec. p. 274.

"The success of a foundry depends upon its line of popular selling faces." Complainant's expert Orchard, A. 299, Rec. p. 88.

Doubtless those skilled in the trade would know "Caslon Bold" type as the complainant's manufacture so long as other foundries refrained from copying it. Speaking generally, however, the trade regarded only the design itself, and treated that as the essence of the type. The design was not the label or authentication of that which was otherwise desirable, but was the very desideratum itself. Here the alleged labels on the goods are the very goods themselves. The learned Circuit Judge said in his opinion:

"There is no claim on the part of the complainant to be protected with reference to the style of typography produced by the type."

There is no direct claim, indeed; but indirectly, by an ingenious extension of the doctrine of unfair competition, the complainant seeks protection for a monopoly of "Caslon Bold" type or typography. This the complainant admitted, and urged in its argument before this court.

The considerations above stated make plain that the doctrine of unfair competition will not support the enlargement of the decree which the complainant seeks. The basis of an action for unfair competition is not merely an ownership of a manufacturer's label, but also deceit or fraud on the defendant's part in the use of the label which will deceive a purchaser or user of the article labeled.

"The cardinal rule upon the subject is that no one shall, by imitation or any unfair device, induce the public to believe that the goods he offers for sale are the goods of another, and thereby appropriate to himself the value of the reputation which the other has acquired for its own products or merchandise." Proctor & Gamble Co. v. Globe Refining Co., 92 Fed. 357, 361, 34 C. C. A. 405, 408.

By the language of its correspondence the defendant emphasized that its type is not of the complainant's manufacture, but is cast more cheaply and by a different process. The Foundry sought to show, indeed, that by reason of the Publishing Company's action a jobber in type might deceive a purchasing printer. But no evidence of this deceit is shown. It is highly improbable, and it is not what the Foundry complains of. The defendant has not sought to avail itself of the complainant's reputation as a founder, but of its taste and skill as a designer. This it may do. It may copy the complainant's type, so long as it does not pretend that the copy is an original product of the complainant. The doctrine is clearly stated by the Supreme Judicial Court of Massachusetts in a case concerned with the sale of zithers:

"Under such circumstances the defendant has the same right that the plaintiff has to manufacture instruments in the present form, to imitate the arrangement of the plaintiff's strings or the shape of the body. In the absence of a patent, the freedom of manufacture cannot be cut down under the name of preventing unfair competition. Dover Stamping Co. v. Fellows, 163 Mass. 191 [40 N. E. 105, 28 L. R. A. 448, 47 Am. St. Rep. 448]. See Singer Manufacturing Co. v. June Manufacturing Co., 163 U. S. 169 [16 Sup. Ct. 1002, 41 L. Ed. 118]. All that can be asked is that precautions shall be taken, so far as are consistent with the defendant's fundamental right to make and sell what he chooses, to prevent the deception which no doubt he desires to practice.

"It is true that a defendant's freedom of action with regard to some subsidiary matter of ornament or label may be restrained, although a right of the same nature with its freedom to determine the shape of the articles which it sells. But the label or ornament is a relatively small and incidental affair, which would not exist at all, or at least would not exist in that shape, but for the intent to deceive; whereas, the instrument sold is made as it is, partly at least, because of a supposed or established desire of the public for instruments in that form. The defendant has the right to get the benefit of that desire, even if created by the plaintiff. The only thing he has not the right to steal is the good will attaching to the plaintiff's personality, the benefit of the public's desire to have goods made by the plaintiff." Flagg Mfg. Co. v. Holway, 178 Mass. 83, 90, 91, 59 N. E. 667.

Of the cases cited by the complainant, Board of Trade v. Christie, 198 U. S. 236, 25 Sup. Ct. 637, 49 L. Ed. 1031, is not based upon the doctrine of unfair competition, and has no bearing upon the case at bar. In most or all of the other cases cited by the complainant deceit as a necessary element of the complainant's case was emphasized. The decree of the Circuit Court seems to exclude possible deception by the defendant, and the complainant does not suggest that it be strengthened, except by giving to the complainant a monopoly of the manufacture of the type itself.

The decree of the Circuit Court is affirmed, and the appellee recovers its costs of appeal.