Samuel H. Hoestadter., J.
Plaintiff seeks an injunction to restrain defendant from unfairly competing with plaintiff and for damages. Prayer for relief is predicated on the claim that defendant, with intent to mislead, imitating plaintiff’s style and arrangement, format and wording, boxing and packaging, of cutlery products.
Plaintiff and its predecesor have engaged in the cutlery business since 1950 and have continuously used the name ‘ ‘ Regent ’ ’ in Old English style printing on their cutlery, labels, packaging and advertising. They adopted and used the following slogans on their packages, labels and advertising: “ forever sharp ”, “ micro serrated edges ” and “ the greatest name in cutlery”.
From 1950 to date sales of cutlery by plaintiff and its predecessor amounted to large sums; they have approximately 2,000 customers in the United States. They have spent large sums of money to advertise and promote the trade name “ Regent ” and their line.
Defendant was incorporated in April, 1958 and began selling-cutlery in June or July, 1958. It uses the trade name “ Regal Crest ” in the sale of its cutlery. When it began doing business, it adopted also the trade name “ Regal Crest Sheffield ”. The guarantee contained in defendant’s boxes of cutlery features the trade name “ Regal Crest Sheffield ”, and it appears on defendant’s cutlery and in its advertising- — including its catalogues.
Defendant uses said trade names in Old English type, the same as plaintiff. Defendant copied two of plaintiff’s slogans exactly, to wit: “ Forever Sharp ” and “ Micro serrated edges ” and as to plaintiff’s third slogan “ The greatest name in cutlery ” the defendant uses “ The finest name in cutlery” and these three slogans appear on defendant’s boxes of cutlery in *323 Liie identical positions as they appear on plaintiff’s boxes. No other manufacturer uses these slogans.
Defendant obtained plaintiff’s inner and outer boxes from plaintiff’s box manufacturer and made up, through another box manufacturer, exact copies of plaintiff’s inner and outer boxes; it also made an exact copy of plaintiff’s display, using the combination of the latter’s specially designed handle and boot bolster, with the same color combination. Defendant also used the identical wording on the inner and outer boxes as used by plaintiff, including slogans, and these were set up in the same positions as on plaintiff’s boxes.
Defendant insists that it had never intended to deceive the public or customers by indicating that it was in any way connected with the plaintiff. It offered evidence that all of its advertising, order blanks, stationery, calling cards, telephone listings, names on the door and all other manners of communication with its customers or any proposed customers were by use of the name £ ‘ Reo Products Manufacturing Corp. ’ ’, the corporate name of the defendant, and that the name ££ Regal Crest ” was used as a trade name for its product, not as a company name.
The bulk of the exhibits consisted of cutlery, packages of cutlery, individual steak knives, advertising material and other physical exhibits tending to show the contentions of the respective parties.
At the close of the trial, I indicated that I was not concerned with the question of the similarity of the cutlery, or in the arrangement of the eutlery in the respective packages produced by the parties herein. For, I deemed these and related matters fairly within the realm of free competition — as distinguished from unfair competition. Moreover, the word “ Micro ” is in common use to indicate something small; even one of the plaintiff’s suppliers uses this name in its title ££ Micro Machine”. The phrase ££ Guaranteed Forever Sharp ” is also not a fanciful phrase, but is a guarantee. In fact, it creates a contractual relationship between the manufacturer and its customers. These words in various forms have been used by manufacturers of many different items for many years and the plaintiff has no exclusive right to them or any other words in the English language. It would be different if they were coined words or had a special significancé to the product of the plaintiff.
The phrases, ££ The Greatest Name in Cutlery” and ££ The Finest Name in Cutlery” have not been shown to be anything other than an advertising blurb. No significance has been attached to plaintiff’s slogan and it has not been shown that any *324 customer has ever identified this phrase with plaintiff’s property. In any event, since the trial the defendant has discontinued the slogan, ££ The Finest Name in Cutlery ”.
In discussion with the court after the trial, the defendant agreed to change the printing and letter arrangement on its inside and outside boxes. It has submitted a photograph of the proposed new wording and arrangement of the lettering.
I conclude that defendant has done or will have done all that can fairly be required of it; and if it adheres to the changes already made and now proffered, no further relief against it is indicated — with one important exception, namely, with respect to the trade name — as distinguished from its corporate name — which defendant uses, i.e., “ Regal ”. The continued use of this trade name in connection with the sale of its cutlery — in its catalogue, on boxes, etc.— in the context of other matters already referred to, is misleading and confusing. Such deception— whether intended or resultant — and confusion, can only be eliminated either by discontinuance of the trade name ‘ £ Regal ’ ’, or the employment — whenever the defendant does use the trade name “ Regal ” — of a legend “ the product of Reo Products Manufacturing Corp.” — the defendant’s corporate name.
The defendant is offered such a choice. If it discontinues the trade name of ‘£ Regal ” — or adds the legend if it continues that trade name — it fairly places itself beyond the reach of further injunctive sanction — notwithstanding other matters of which the plaintiff has complained.
For, we must draw on the total mise en scene in search for the answer whether deception and confusion and resultant unfair competition, or a phase of free competition in the market place, is present in any given case. There are necessarily some conflicts in trade; the matter resolves itself into one of degree — permissible degree. For, as Justice Holmes often remarked, in most matters of the law the question is one of degree! Here the trade name, without any indication of the corporate aegis of the product, is the objectionable feature which translates what might be regarded within the ambit of free competition into the realm of unfair competition.
For, as we have been instructed: ££ Most definitions of unfair competition found in opinions of courts are written in terms of £ passing off.’ (I Nims, Law of Unfair Competition and Trade Marks, p. 30.)
££ Unfair competition consists in the use of methods, brands or advertising matter intended to cause, or in fact causing confusion in the trade, or to induce or mislead the trade into the belief that the goods of the person or firm marketed under such *325 similar device are the goods of the person or firm who has established a trade and acquired a good will in business in connection with the rightful use of such trade token.” (Peters Milling Co. v. International Sugar Feed No. 2 Co., 262 F. 336, 340 [C. C. A. 6th].)
‘ ‘ This is nothing but a convenient name for the doctrine that no one should be allowed to sell his goods as those of another.” (Vogue Co. v. Thompson-Hudson Co., 300 F. 509, 512 [C. C. A. 6th].) (See 1 Nims, Law of Unfair Competition and Trade Marks [4th ed.].) As Nims says (p. 373): “ The law of unfair competition does not give to one dealer the sole right to use a certain form or shape or feature of merchandise even though he may have been the first to use it. ’ ’
An example of the application of this proposition is found in a leading case in the courts of Massachusetts (Flagg Mfg. Co. v. Holway, 178 Mass. 83) where the defendant copied a zither originated and manufactured by the plaintiff. The shape and styling was the same and even the arrangement of strings. Mr. Justice Holmes wrote the decision and stated in part (pp. 90-91): “ Under such circumstances the defendant has the same right that the plaintiff has to manufacture instruments in the present form, to imitate the arrangements of the plaintiff’s strings or the shape of the body. In the absence of a patent the freedom of manufacture cannot be cut down under the name of preventing unfair competition. ’ ’ The court further stated that the only thing that the defendant does not have the right to steal is the good will attaching to the plaintiff’s personality, the benefit of the public’s desire to have goods made by the plaintiff.
That is precisely why I conclude that defendant must discontinue the name “ Regal ” or qualify it by indicating the source of the manufacture of the product so labelled. But plaintiff has no proprietory right or interest in the slogans and phrases used in common; their use does not constitute unfair competition. They are good English words and constitute merely a description of the product — they have no fanciful signification, as I have already indicated.
In Germanow v. Standard Unbreakable Watch Crystals (283 N. Y. 1, 15) the court stated: “ When we consider the argument that defendant’s conduct has been competitively unfair and amounts to improper business practice, we must remember that the defendant is to be judged and its conduct examined in the light of the morals of the market place. Plaintiffs and defendant are business competitors in a small field where each is striving for business. The granting of an injunction here would give magic efficacy to the sale of a cabinet. No precedent exists in the *326 recorded decisions on unfair competition where under similar facts an injunction has been granted. Such a step would extend the doctrine of unfair competition much too far.”
The foregoing constitutes the decision of the court pursuant to section 440 of the Civil Practice Act.
Settle judgment accordingly.