MAGEE FURNACE COMPANY *vs.* JOHN H. LE BARRON.

Suffolk.   Nov. 21, 1878. — June 28, 1879.   COLT & MORTON, JJ., absent.

On a bill in equity to restrain the defendant from using the plaintiff's trade-marks, it appeared that the plaintiff, a manufacturer of stoves and ranges not patented, placed upon each of these stoves and ranges a name and number as a trade-mark, and also placed upon such of their separate parts respectively as were liable to be worn out rapidly the initial letter and the number of the stove or range to which it belonged; that each of these parts was well known, had acquired a high reputation, and was sold under the name of the letter and number placed upon it; that the defendant procured some of these parts, made patterns from them, and cast from the patterns parts of stoves and ranges inferior in quality to the plaintiff's, but having all their peculiarities of ornamentation, lettering and numbering, and advertised these parts for sale as manufactured by himself, describing the parts by the names used to designate them by the plaintiff.   *Held,* that the bill could not be maintained.

BILL IN EQUITY, filed March 29, 1877, alleging that the plaintiff, a corporation established under the laws of this Commonwealth, had for many years been engaged in the business of manufacturing and selling furnaces, ranges and stoves, and parts of the same, and had during such time exclusively used upon each of the stoves one of the following names : " Magee Advance No. 7," " Magee Advance No. 8," " Chelsea Cook No. 7," " Chelsea Cook No. 8," " Champion Cook No. 7," " Champion Cook No. 8," " Magee No. 7," " Magee No. 8," " Standard Cook No. 7," " Standard Cook No. 8," " Success Cook No. 7," " Success Cook No. 8," and during the same time had used upon ranges, either the name " Magee Portable Range No. 7," or the name " Magee Portable Range No. 8;" that each of these names was used to designate the stove or range respectively as an article of a peculiar kind, character and quality, and as manufactured by the plaintiff, and as a trade-mark.

That certain parts of each of the stoves and ranges, which are peculiar in shape and suited only to such stove or range, such as are entitled grates, linings, beds, fronts, gas-burners and shakers, by reason of the great heat and hard usage to which they are necessarily subjected, are worn or burnt out, broken and otherwise rendered useless, from time to time, while the rest of the stove or range yet retains its utility; and on this account numbers of each of these parts must be made for each of said stoves

and ranges, that new ones may replace those which are rendered useless from time to time; that the plaintiff, by great pains, expense and skill manufactures these parts of the stoves and ranges so that they fit the stoves and ranges with great exactness, and are of such material and workmanship as to endure the heat and usage to which they are subjected to an extraordinary extent, whereby they have acquired a high repute among the users of such stoves and ranges, for their durability and the facility with which the new ones may be made to replace those which are rendered useless; and the sale of them and of. the stoves and ranges of which they form a part, by the plaintiff, has been much increased.

That not only has the aforesaid name of each of the stoves and ranges been used for and upon and connected with each of the parts of the stove or range in the sale and manufacture of each of such stoves and ranges as a whole, but the plaintiff has always made and sold the aforesaid parts, respectively, for the replacement of like parts which have become useless, under the name applied to the stove or range to which they belong, to designate the parts as articles of a peculiar kind, character and quality, and as manufactured by the plaintiff, and as a trade-mark; and has the right to use each of these names as a trade-mark for the parts of the stove or range for which it is used.

That, since the plaintiff has had the exclusive right to use these names or trade-marks as aforesaid, the defendant has been and now is manufacturing parts corresponding to the parts of the stoves and ranges made and sold by the plaintiff, and has been and now is, without the plaintiff's consent, using in the sale thereof the same names therefor as those used by the plaintiff, for the purpose of falsely representing them to be of the same kind, character and quality as those manufactured and sold by the plaintiff; whereas, in fact, they are not of the same kind, character and quality, and are ill-fitting and inferior in material and workmanship to those sold by the plaintiff, and tend greatly to injure the reputation of the stoves and ranges and the parts thereof made and sold by the plaintiff.

That the defendant, by his unlawful and wrongful acts aforesaid, has made and received great gains and profits, which ought

to and would have, but for said unlawful and wrongful acts, been received by the plaintiff.

The prayer of the bill was for an answer under oath, for an account, for an injunction to restrain the defendant from the use of the plaintiff's trade-marks, and for further relief.

The answer admitted that the defendant had made castings of parts of stoves and ranges for dealers in various parts of the country, from patterns furnished to him by such dealers, which had on them letters and figures, such as a grate with " M. A. 7 " upon it, which fitted a stove called " Magee Advance No. 7 ; " a grate with " R. 7 " upon it, which fitted a range called " Magee Portable Range No. 7 ; " a gas-burner with " 7 R. P." upon it, which fitted the same range; a grate with " P. R. 8 " upon it, which fitted a range called " Magee Portable Range No. 8 ; " a gas-burner with " P. R. 8 " upon it, which fitted the same range; and many others of a similar kind, which need not now be mentioned; but denied that such letters and figures constituted any trade-mark of the plaintiff; and averred that, in all cook-stoves and ranges, such letters and figures were solely for the purpose of showing the number of inches in diameter of the circular openings in the top of the stove or range; and also averred that the letters and figures on some of the other castings were intended simply to facilitate the laborers in extensive furnaces and warehouses in classifying such goods, and were not used as a trade-mark by the plaintiff.

At the hearing before *Ames*, J., it appeared that the plaintiff manufactured and sold the ranges and stoves mentioned in the bill, using as trade-marks the peculiar names mentioned in the bill, both by casting them on the stoves and ranges, and by designating them with said names in selling them; and also manufactured and sold grates, linings, beds, fronts, gas-burners and shakers, peculiarly fitted to each of such stoves and ranges, to replace the like parts thereof which became worn out or broken, using in the sale the trade-mark of each stove and range to designate the parts sold for its repair, and also casting on each of the parts the initial letters and number of the trade-mark of the stove or range for which such part was fitted, in the manner set forth in the answer. It also appeared, that the numbers applied to stoves and ranges, and their parts, made by the plaintiff and other

manufacturers, always corresponded with the number of inches in diameter of the pot-holes; and that the parts above mentioned, made and sold by the plaintiff, had been made of the best material, and to fit with great exactness, and had acquired high repute thereby.

It appeared that the defendant, after the adoption by the plaintiff of the names mentioned in the bill, and before the filing of the bill, sold, in large numbers, parts of stoves and ranges corresponding to those named in the bill, to be used for the repair of the stoves and ranges made and sold by the plaintiff, and advertised the parts so sold by him, by issuing a catalogue entitled "Catalogue of Grates and Linings manufactured by J. B. Le Barron, Middleboro', Mass.," and containing in its list the following:

|  |  |  |  |  |
|---|---|---|---|---|
| Advance grates | | No. 7 & 8. | | |
| " | beds | " | " | |
| " | fronts | " | " | |
| " | gas-burners | " | " | |
| Chelsea Cook (O.P.) | grates | No. 7 & 8. | | |
| " | " | beds | " | " |
| " | " | fronts | " | " |
| Chelsea Cook (N.P.) | grates | No. 7 & 8. | | |
| " | " | beds | " | " |
| " | " | fronts | " | " |
| Champion Cook | grates | No. 7 & 8. | | |
| " | " | fronts | " | " |
| " | " | beds | " | " |
| Magee Cook | grates | No. 7 & 8. | | |
| " | " | beds | " | " |
| " | " | fronts | " | " |
| " | " | gas-burners | " | " |
| " | " | shakers | " | " |
| Magee Range | grates | No. 7 & 8. | | |
| " | " | fronts | " | " |
| " | " | beds | " | " |
| " | " | gas-burners | " | " |
| Success Cook | grates | " | " | |

These names and numbers were to designate the parts, made and sold by the defendant, to repair the stoves and ranges made

and sold by the plaintiff; and the defendant sold such parts, when ordered, by these names.

It appeared that the defendant had cast these parts in moulds made from the parts sold by plaintiff as aforesaid, and had thereby cast on his parts the initial letters and numbers borne by the parts made by the plaintiff; but when the defendant had notice by the subpœna that this suit was commenced, he caused to be filed off from his patterns all letters, numbers, initials and marks whatsoever, and ever after cast the parts accordingly.

The defendant contended that neither the sale of the parts, with representation by his catalogue that the parts were of his manufacture, nor the sale of the parts without the letters and numbers on them, nor the sale of the parts with the letters and numbers on them, would violate any rights of the plaintiff, and that such letters and numbers did not constitute a trade-mark, and the use of them would not constitute a representation that the parts were made by the plaintiff, and that the several parts of the stoves and ranges were not protected by a trade-mark on the stoves and ranges, so as to prevent the making by the defendant of the several parts for repairs; that if he had made and sold either or all of the stoves and ranges described in the bill, striking off all letters and figures or marks whatever which tended to represent them as made by the plaintiff, and more especially if the defendant represented them to have been made by himself, there would be no violation of a trade-mark, nor any trade-mark to be violated; and that the making or casting those parts of the stoves or ranges which require to be often renewed, such as grates, beds or grate-rests, fronts, gas-burners or shakers, either without any representation thereon indicating to the public that the same were cast by the plaintiff, or without any letters or marks whatever thereon, except what constituted the mere plain grate, grate-rest, front, gas-burner and shaker, would not constitute a violation of a trade-mark of the plaintiff.

The judge found that the parts manufactured and sold by the defendant were made of inferior metal, and were inferior in accuracy of fit to those manufactured by the plaintiff; and held that the name of the stove or range attached as a trade-mark to each of the parts of it, especially to those parts which bore the

initial letters of the trade-mark; that the defendant, by selling the parts and advertising them as he did, infringed the rights of the plaintiff; that designating the parts in their sale by the name adopted by the plaintiff, as by the catalogue or otherwise, violated the rights of the plaintiff, even though the defendant did not represent that they were made by the plaintiff; and that the plaintiff was entitled to an injunction and account, as prayed in the bill; and ordered that the case be sent to a master to state the account.

From this decision the defendant appealed; and the judge, being of opinion that the matter ought to be determined by the full court before further proceedings were had, reported the case for that purpose.

*T. L. Livermore*, for the plaintiff.

*E. Ames*, for the defendant.

SOULE, J. The defendant had the legal right to manufacture and sell parts of stoves suitable to replace worn-out parts of the stoves made by the plaintiff. He violated no right of the plaintiff by using parts made by it as patterns for casting like parts. As the plaintiff had no patents, it had no exclusive right to manufacture or sell. Recognizing this, it contends that the defendant violated its right to certain trade-marks by making parts of stoves with certain letters and numbers thereon, and by selling them under the several names which were the plaintiff's trade-marks.

Looking solely at the use of the letters and numbers on the parts of stoves made by the defendant, we are of opinion that there was no violation of the plaintiff's trade-mark. It appears that the numbers were used by the plaintiff and the defendant as they were used by stove manufacturers generally to indicate a size or measurement; they formed no part of the trade-mark. The letters, in some instances a single letter, in other instances two letters, are in no case the trade-mark which the plaintiff describes in his bill, and cannot be regarded as likely, when considered by themselves, to mislead a purchaser into supposing that they were the trade-mark described in the bill. To illustrate: The plaintiff sets up as its trade-mark for a particular class of ranges the words " Magee Portable Range." The parts manufactured by the defendant to repair this range were marked,

some "R. 7," others "P. R. 8," others "7 R. P.," others "P. R. 8." In these marks there is no such similarity to the alleged trade-mark as to constitute an infringement.

It appears, however, that the stoves and ranges manufactured by the plaintiff, and which have acquired a reputation in market and are known by the several names which the plaintiff has attached to them respectively as trade-marks, have been by it sold so extensively that separate parts for replacing parts rapidly worn out by exposure to great heat have become a well-known article of merchandise; and that the plaintiff has established a business in the manufacture and sale of such parts, each part being sold and known by the same name and trade-mark which designates the stove or range which the part is intended to repair. The parts thus manufactured and sold by the plaintiff have a peculiar excellence of material, and fit the respective stoves and ranges with a peculiar nicety. This has given to the parts, known in market by names or trade-marks which they have acquired, a high reputation. The defendant, using these several parts as patterns, has cast like parts for repairing the stoves known as "Magee Advance," "Chelsea Cook," "Champion Cook" and "Magee," and the range known as "Magee Portable Range," the parts thus made necessarily having all the peculiarities of configuration, ornamentation, lettering and numbering which the originals from which they were imitated had. These parts the defendant has advertised for sale, as "Advance" grates, beds, &c., as "Chelsea Cook" grates, beds, &c., and so on, using in his advertisement the names of the several classes of stoves, and of the range, which are attached to them by reason of the adoption by the plaintiff of those names as trade-marks. His advertisement of the goods has been by a catalogue which is entitled "Catalogue of Grates and Linings manufactured by J. B. Le Barron, Middleboro', Mass." He has sold the goods, when ordered, by the names used in the catalogue. It is to be observed that he does not send his goods into market with the plaintiff's trade-mark attached, and that he advertises them as manufactured by himself. If he sent them into market with the plaintiff's trade-mark on them or affixed to them, he would not be protected by the fact that the purchaser from him knew that the goods were not made by the plaintiff, and was, therefore,

not deceived by the trade-mark, because the counterfeited trade-mark might be, and probably would be, the means of deceiving subsequent purchasers as to the origin and quality of the goods. *Wotherspoon* v. *Currie*, L. R. 5 H. L. 508. But, as he publishes to the world the fact that he is the manufacturer of what he sells, and does not attach to his goods any label or mark apt to deceive subsequent purchasers from his vendees as to the origin of the goods, he cannot be regarded as infringing on the rights of the plaintiff. He states clearly and intelligibly to those who deal with him, that he, and not the plaintiff, makes the wares he sells. To subsequent buyers he says nothing, directly or indirectly, as to the origin or quality of the goods; and if they are deceived as to what they are buying, it is not by means of him. *Singer Manuf. Co.* v. *Wilson*, 2 Ch. D. 434.

The names used by the defendant in his catalogue are equally apt, whether he intended to deceive as to the origin of the goods sold by him, or merely to indicate the well-known classes of stoves which his grates, beds and other parts would fit; but as he has carefully stated, in the same catalogue, that he is the manufacturer, the fair conclusion is that he had no purpose to mislead, but used the names of the stoves as he did, to express the idea in a concise form, which would have been conveyed more unequivocally perhaps if he had said, "Grates to fit Chelsea Cook, Nos. 7 & 8," instead of saying, as he did, "Chelsea Cook grates, No. 7 & 8;" and such clearly must have been the understanding of all who read his catalogue.       *Bill dismissed.*