READING STOVE WORKS, ORR, PAINTER & COMPANY *vs.*
S. M. HOWES COMPANY.

Suffolk.  November 30, 1908. — March 8, 1909.

Present: KNOWLTON, C. J., MORTON, BRALEY, SHELDON, & RUGG, JJ.

*Trade Name.  Trademark. · Unfair Competition.  Equity Jurisdiction,* To restrain unfair competition, For an accounting.

A manufacturer of stoves who has acquired the right to use the word " Sunshine " as a trademark and a trade name can maintain a suit in equity to restrain another manufacturer from manufacturing and selling grates and other detachable stove parts marked with the word " Sunshine " either in full or abbreviated by the use of the letters " SS " or " S " in such a way as to represent the parts as made by the proprietor of the trademark and trade name, leaving the infringing manufacturer free to make and sell as his own product all the parts with the marks omitted.

A manufacturer of detachable parts of stoves, who wrongfully sells such parts as the product of another manufacturer by marking them with the trademark and trade name of such other manufacturer, is liable in a suit in equity to account for the entire profits, if any, which he has realized from the sale of parts bearing the infringing marks.

BILL IN EQUITY, filed in the Superior Court on April 7, 1903, and amended on January 24, 1907, to restrain the defendant from manufacturing, selling or offering for sale, directly or indirectly, any parts for stoves or ranges manufactured by it or any person other than the plaintiff under the denomination of " Sunshine " or " Othello" parts for stoves and ranges, or marked with the letters " S " or " SS," used on such stove parts singly

or in conjunction with various names to designate the variety of " Sunshine " or " Othello " stoves of which such stove parts are a portion, also for an accounting by the defendant for the profits made by it from the sale of fraudulent imitations of the plaintiff's goods, and for further relief.

In the Superior Court the case was heard by *Lawton,* J., and the evidence was taken by a commissioner. It appeared that in 1876 the word " Sunshine " was registered by the plaintiff as a trademark under the laws of the United States. At the request of the plaintiff the judge made findings that the plaintiff had adopted and acquired a trademark in the word " Sunshine," that the plaintiff had adopted and acquired as a trade name the word " Sunshine " to designate as of its manufacture the goods made by it, and that the stove parts made and sold by the defendant in imitation of the plaintiff's were not sold accompanied by any designation or statement plainly showing that the defendant's stove parts were not of the plaintiff's manufacture.

The judge refused to find that the plaintiff had adopted or acquired a trademark or a trade name in the letters " S " or " SS," and refused to find that " the defendants' legitimate business can be properly conducted without giving their stove parts the distinctive misleading designation and appearance which they have." He also refused to make other rulings or findings requested by the plaintiff. He refused to find that the defendant had been guilty of unfair competition, and made a final decree that the bill be dismissed with costs. The plaintiff appealed.

*J. W. Farley,* (*A. Hemenway* with him,) for the plaintiff.

*E. A. Whitman,* for the defendant.

BRALEY, J. By prior appropriation of the word " Sunshine," not as indicative merely of the quality of its goods, but as making plain their origin, and the plaintiff's identity as the manufacturer of the stoves which under this name it has for many years made and sold in the market, the plaintiff correctly was held to have acquired a valid trademark which the law will protect from infringement. *Regis* v. *Jaynes,* 185 Mass. 458, 459, 460, and cases cited. *Lever Brothers* v. *Pasfield,* 88 Fed. Rep. 484. *Walter Baker & Co.* v. *Delapenha,* 160 Fed. Rep. 746. In their manufacture the plaintiff attached to the finished stoves a name plate bearing the word " Sunshine," with a descriptive

adjective, and cast in connection with certain numerals either the full word, where the size of the casting permitted, or, if too small, the abbreviation " SS " or " S," on the detachable parts. If these numerals designate the size of the covers, and dimensions of the oven, and indicate that the grate or other part which bears them fitted, or was intended to fit, a " Sunshine " stove with covers and oven of similar size, the office of the name or its abbreviation is not intended to describe the size, shape, or place of the grate or parts in the stove, or to distinguish one part from another as having a different function, but to denote the producer. While the finished stove when put upon the market is protected, the trademark embraces also the component parts from which it has been assembled. If an infringer who could not lawfully imitate and sell a complete " Sunshine " stove, and represent it as having been made by the plaintiff, was permitted instead to make and vend to jobbers and retail dealers under such a representation the various parts, including the frame, with the name either in full, or abbreviated, marked upon them by raised or impressed letters, upon the ground that while the whole could not be pirated, the constituent parts might be, the protection and value of the plaintiff's trademark would be greatly impaired, if not wholly destroyed. *Filley* v. *Fassett,* 44 Mo. 168, 178. *Ford* v. *Foster,* L. R. 7 Ch. 611, 623. Because of these distinctions the present case does not fall within *Magee Furnace Co.* v. *LeBarron,* 127 Mass. 115, and *Deering Harvester Co.* v. *Whitman & Barnes Manuf. Co.* 91 Fed. Rep. 376, on which the defendant relies.

It is conceded that some parts, especially the grates, wear out and have to be replaced frequently, and the making from original patterns of duplicates for such replacements comprises a very valuable portion of the plaintiff's business. The findings of the trial judge state, that at the date of filing the bill the defendant, as a manufacturing jobber, has " been selling repair parts made by using originals as patterns, or as copies from which to make patterns, and they imitate those made by the plaintiff including an exact imitation of the numbers, letters and adjective word." The defendant also is found to have sent out circulars or catalogues, representing that certain of the duplicates which it offered for sale were in fact made by the plaintiff, and the evi-

dence shows that on several occasions the defendant filled orders for goods of the plaintiff's make with goods of its own manufacture. By the course pursued, the defendant infringed the trademark by representing and selling its goods as those of the plaintiff. *Lawrence Manuf. ·Co.* v. *Lowell Hosiery Mills,* 129 Mass. 325, 327. *Frank* v. *Sleeper,* 150 Mass. 583. *Regis* v. *Jaynes,* 185 Mass. 458. *Cohen* v. *Nagle,* 190 Mass. 4. *Flagg Manuf. Co.* v. *Holway,* 178 Mass. 83. *McLean* v. *Fleming,* 96 U. S. 245. *Perry* v. *Truefitt,* 6 Beav. 66. *Reddaway* v. *Banham,* [1896] A. C. 199, 204.

To obtain injunctive relief the plaintiff was not required to prove that customers had actually been deceived, or had bought parts sold by the defendant under the belief that they were the plaintiff's manufacture. *American Tin Plate Co.* v. *Licking Roller Mill Co.* 158 Fed. Rep. 690. It is sufficient if the resemblance is such that they are likely upon comparison to mistake one for the other. *Collinsplatt* v. *Finlayson,* 88 Fed. Rep. 693. *Vulcan* v. *Myers,* 139 N. Y. 364. *Avery & Sons* v. *Meikle & Co.* 81 Ky. 73, 91. *Edelsten* v. *Edelsten,* 1 DeG., J. & S. 185. *Orr* v. *Johnson,* 13 Ch. D. 434. Nor is it material, where such deception appears, that retail dealers or individual customers alike are indifferent whether they buy the plaintiff's or the defendant's castings. *Williamson Corset & Brace Co.* v. *Western Corset Co.* 70 Mo. App. 424. *Lever* v. *Goodwin,* 36 Ch. D. 1.

It is the defendant's attempt to dispose of its goods by representing them as made by the plaintiff which constitutes the wrong, and not the indifference of the purchaser as to whose product he is buying, or lack of appreciation of the superiority of the plaintiff's articles. *Regis* v. *Jaynes,* 185 Mass. 458, 462. *New England Awl & Needle Co.* v. *Marlborough Awl & Needle Co.* 168 Mass. 154, 155. *George G. Fox Co.* v. *Glynn,* 191 Mass. 344, 349. *Vulcan* v. *Myers,* 139 N. Y. 364. *McLean* v. *Fleming,* 96 U. S. 245. *Menendez* v. *Holt,* 128 U. S. 514. *Elgin National Watch Co.* v. *Illinois Watch Case Co.* 179 U. S. 665. *Saxlehner* v. *Nielsen,* 179 U. S. 43. *Ford* v. *Foster,* L. R. 7 Ch. 611, 623. *Singer Machine Manufacturers* v. *Wilson,* 3 App. Cas. 376. *Cellular Clothing Co.* v. *Maxton,* [1899] A. C. 326, 334. In *Singer Machine Manufacturers* v. *Wilson,* 3 App. Cas. 376, 391, Lord Chancellor Cairns said, "A man may take the trademark of another igno-

rantly, not knowing it was the trademark of the other; or he may take it in the belief, mistaken but sincerely entertained, that in the manner in which he is taking it he is within the law, and doing nothing which the law forbids; or he may take it knowing it is the trademark of his neighbor, and intending and desiring to injure his neighbor by so doing. But in all the cases . . . the injury to the plaintiff is just the same." The defendant by the course which it pursued could not have been ignorant of the probable consequences, for the retail dealers to whom it sold would put out the parts as having been made by the plaintiff, and the retail customer who bought a casting from the defendant to fit his "Sunshine" stove would also be misled, even if ignorant of the deception. *Lever* v. *Goodwin*, 36 Ch. D. 1. The plaintiff, moreover, had the exclusive right to the use of its trademark, and an infringement having been proved, the suit can be maintained for an injunction, as the defendant would not be exonerated even if it had acted innocently. *New England Awl & Needle Co.* v. *Marlborough Awl & Needle Co.* 168 Mass. 154. *Viano* v. *Baccigalupo*, 183 Mass. 160, 164. *McLean* v. *Fleming*, 96 U. S. 245, 254, 255. *Regis* v. *Jaynes*, 191 Mass. 245, 248. *Elgin National Watch Co.* v. *Illinois Watch Case Co.* 179 U. S. 665. *Saxlehner* v. *Siegel-Cooper Co.* 179 U. S. 42. *Beebe* v. *Tolerton & Stetson Co.* 117 Iowa, 593. *Saxlehner* v. *Appolinaris Co.* [1897] 1 Ch. 893.

But, while an injunction should be granted, the decree must be limited to restraining the defendant from putting out without the plaintiff's sanction stove parts under the name "Sunshine," whether the word is used in full or abbreviated by the letters "SS" or "S", but leaving it free to make and vend as its own product all the parts with the marks omitted. *Magee Furnace Co.* v. *LeBarron*, 127 Mass. 115. *Edison Manuf. Co.* v. *Gladstone*, 58 Atl. Rep. 391. *Tarrant* v. *Hoff*, 76 Fed. Rep. 959. *Walter Baker & Co.* v. *Baker*, 87 Fed. Rep. 209, 211. *Rushmore* v. *Manhattan Screw & Stamping Works*, 163 Fed. Rep. 939, 940. *Ford* v. *Foster*, 7 Ch. 611, 634.

The plaintiff also asks for an accounting of profits, which were not gone into at the trial, as it was understood by counsel and the judge, that, if the plaintiff was entitled to them, a master was to be appointed to state the account. In *Regis* v. *Jaynes*,

191 Mass. 245, 248, it was said by Mr. Justice Sheldon, "There is some conflict in the decisions; but we think that the weight of modern authority is in favor of the rule that an account of profits will not be taken where the wrongful use of a trademark or a trade name has been merely accidental or without any actual wrongful intent to defraud a plaintiff, or to deceive the public." See also *W. R. Lynn Shoe Co.* v. *Auburn-Lynn Shoe Co.* 100 Maine, 461, and *Scheuer* v. *Muller*, 20 C. C. A. 161, 165, and notes, for a collection and review of the cases. Upon this branch of the case, which has not been argued by the defendant's counsel or referred to in his brief, there does not seem to be any material conflict in the evidence. The defendant's commercial conduct for its own advantage by advertising through circulars or catalogues, and in selling its goods as those made by the plaintiff, cannot be characterized as purely unintentional and accidental, even if after bringing the bill a true statement was then stamped on all circulars subsequently issued, and the letters removed from the castings. It might not be unwarranted to infer, in the light of all the evidence as to the defendant's purpose, that the abandonment was in the nature of an admission of an infringement. *W. R. Lynn Shoe Co.* v. *Auburn-Lynn Shoe Co.* 100 Maine, 461, 464.

But there is no necessity to draw this inference. If, as the judge found, that without an intent to deceive, "they have imitated the numbers, letters, and the adjective word as the most convenient means of identifying the stove for which the parts are intended to fit," yet, from the testimony of the defendant's treasurer and the manager of its stock room, other distinctive marks for identification could have been as easily selected and adopted before as were adopted and used after the bill was filed. A further inference from the treasurer's evidence also follows, that from the general character of the business, with which he was fully acquainted, he either knew of the plaintiff's trademark or was put upon his inquiry, and could not fail to have realized from the sale and the demand for the parts that by the method employed the defendant would "undoubtedly cut into the market of the plaintiff to a considerable extent," as the judge finds has been actually accomplished. In no just sense can the defendant be said to have acted innocently or in ignorance of the plaintiff's

rights, and the intent to defraud inferentially follows from the wrongful acts themselves, where the wrongdoer knows or must be presumed to have contemplated their probable effect upon the rights of another. *Viano* v. *Baccigalupo*, 183 Mass. 160, 164. *Walter Baker & Co.* v. *Baker*, 77 Fed. Rep. 181.

Under the second prayer, while there is no occasion to consider the question of compensation assessed as damages, because such damages are not claimed, the plaintiff is entitled to an accounting of the entire profits, if any, which the defendant has realized from the sale of parts bearing the infringing marks, and the account is to be stated as of the time when the bill was filed. *Atlantic Milling Co.* v. *Rowland*, 27 Fed. Rep. 24. *Regis* v. *Jaynes*, 191 Mass. 245, 249. *W. R. Lynn Shoe Co.* v. *Auburn-Lynn Shoe Co.* 100 Maine, 461. *Benkert* v. *Feder*, 34 Fed. Rep. 534, 535. *Collins Co.* v. *Oliver Ames & Sons Corp.* 18 Fed. Rep. 561.

It remains to notice the defense of unreasonable delay which has been argued, although not raised by the defendant's answer, nor referred to in the judge's memorandum of decision. But while this defense as to relief is not open as of right because not pleaded, the evidence of the plaintiff's president shows that reasonable diligence has been used in bringing suit after the plaintiff had definitely ascertained the nature and extent of the defendant's infringement. *Upmann* v. *Forester*, 24 Ch. D. 231, 235. *Lee* v. *Haley*, L. R. 5 Ch. 155.

The decree dismissing the bill must be reversed, and a decree is to be entered awarding an injunction, and for an accounting for profits.

*Decree accordingly.*