### HUSTON *v.* BARRETT; *et vice versa.*

1. One who has originated a distinctive package in quality, color, size, and shape, in which he has placed his article of merchandise for sale to the public, is entitled to an injunction against the use, by a rival in business, of a package which is not distinguishable in any material particular from that of complainant, except the rival's name on the package so used, in place of complainant's name.

2. The court erred in refusing an injunction.

Nos. 6054, 6055. APRIL 16, 1928.

Injunction. Before Judge Moore. Fulton superior court. April 9, 1927.

*Candler, Thomson & Hirsch, T. J. Long,* and *Hatcher & Hatcher,* for plaintiff.

*Alston, Alston, Foster & Moise,* for defendant.

HILL, J.   Tom Huston, trading as "Tom Huston Peanut Company" brought a petition for injunction against C. O. Barrett, trading as "Barrett Potato Chip Company," to restrain the defendant from using a container, a paper bag, for the sale of salted peanuts, or other product, of a similar size, shape, color, or of the same general appearance, as that used by the plaintiff, and from in any way passing off or substituting his product as and for the product of plaintiff, and from in any way engaging in any acts of unfair competition.   Plaintiff's contention is that he is not entitled to the exclusive right to use a rectangular bag, nor to the exclusive right to use a glassine paper bag, nor to the exclusive use of a bag 1-13/16 inches wide, nor to the exclusive right to use a bag six inches in height, but plaintiff does contend, on account of priority of adoption and user, that he is entitled to use *the combination* exclusively, when that combination has come to denote the origin of the product in plaintiff, and to distinguish his product from all other similar products.   The contention of the defendant is, that, if he has so marked and identified his product as to distinguish it from that of the plaintiff, no relief can be granted, even though he has appropriated the same size package which the plaintiff has adopted, although defendant's bag clearly designates and marks his product as his own, and distinguishes it and differentiates it from that of the plaintiff.   The defendant filed a plea in abatement on the ground that a similar suit is pending in the District Court of the United States for the Northern District of Georgia.   The defendant also filed demurrers and an answer.   At the interlocutory hearing, after evidence, the judge made an order permitting the defendant to continue to "use the so-called elongated bag for the sale and distribution of his salted peanuts, but enjoined the defendant from the use of that style or kind of glacine paper known as pique glacine paper in the construction of the said bag or container," the injunction to go into effect thirty days after the order.   To this order the plaintiff excepted.   The defendant filed a cross-bill of exceptions, assigning error on that part of the judge's order enjoining the defendant "from the use of that style or kind of

glacine paper known as pique glacine paper in the construction of the said bag or container."

The controlling question in this case is, whether the plaintiff is entitled to the exclusive use of a paper-bag container in the sale of his product, the bag being made of a particular kind of paper of a distinctive color and size, where by the use of such container he has established a trade in a product that has become well known because of the distinctive package, and whether it is unfair competition for another to use a container similar in all respects, save the name of the manufacturer which is printed on the bag. "Where a person has adopted a particular combination of features, producing a peculiar visual appearance for the purpose of presenting his goods to the market, which at the time of its adoption was not in use by any one else, he is entitled to be protected in its use as against any other person who has imitated it in such a way as to mislead the public. So it has been decided that one who has put up his wares in a distinctive package is entitled to an injunction against the use by a rival of a package indistinguishable in every particular, except the use of the rival's name at the bottom of the package in place of the complainant's." 26 R. C. L. 887, § 62, notes 18, 19, and cit. The plaintiff was engaged in the business of selling, to the wholesale and retail trade, toasted salted peanuts, which after being prepared were placed in a bag rectangular in shape, approximately six inches in length, and approximately 1-13/16 inches wide. The bag was made of paper of a glassine texture, one end of which was closed by placing a red and blue seal thereon, and on one side of the seal was printed "Tom's Toasted Peanuts." The bag was first used by the plaintiff in marketing his product, and the idea of marketing toasted salted peanuts in such a package originated with plaintiff; and by reason of the novelty and distinctiveness of the bag, plaintiff's product had acquired a wide reputation, and enjoyed a wide popularity. Large sums of money were expended in advertising the plaintiff's product, and by these means it became popular and distinctive. The defendant was engaged in a similar line of business, and placed his toasted salted peanuts in a bag the general appearance of which was a colorable imitation of plaintiff's bag. It was the same shape, made of the same kind of paper, and was identical in size, with a seal at the end of the bag with printed matter thereon, including the name "Gardner."

It was said in the case of Lever *v.* Goodwin, 4 Robb. Pat. Cases (U. S.), 492, 505, that "there is no monopoly in this parchment paper; there is no monopoly in the spaced printing; then why should I be restrained in carrying on business from using those things as to which the plaintiffs can not claim any monopoly whatever? That was an obvious fallacy. There may be no monopoly at all in the individual things separated; but if the whole are so joined together as to attempt to pass off and to have the effect of passing off the defendant's soap for plaintiffs', then, although the plaintiffs have no monopoly, either in . . the parchment paper, or the spaced printing, yet if those things in which they have no sole right are so combined," the plaintiff is entitled to an injunction. In Morgan *v.* Ward, 152 Fed. 690 (12 L. R. A. 729), it was said: "A manufacturer may put forth his goods in a dress, in no element of which—size, shape, color, lettering, word, or symbol—has he an exclusive right of use; and yet, if the ensemble has come to be a public guaranty of origin and quality, he may secure protection against unfair trade of a preying competitor." In the instant case there is nothing distinctive in the particular kind of paper used, or in the particular size of the bag, or in the shape, when each of these particulars is taken separately, and nothing in either of them that would attract any particular notice of the buying public; but all of them taken together, the ensemble, when occurring repeatedly would be bound to attract attention, and in time by constant repetition to denote to the buying public a particular brand of a particular product. And any competitor might and could, without the competition being unfair, use a similar color, or a similar size, or a similar shape, any one of the combination; but when he. uses and imitates the entire combination so as to mislead the buying public into thinking they are buying the product of the plaintiff, then the above rule as stated in R. C. L., and the cases cited, is violated, and the competition becomes unfair and the plaintiff should be protected.

The case of Hildreth *v.* McDonald Co., 164 Mass. 16 (41 S. E. 56, 49 Am. St. R. 440), is very similar in its facts to the present case. It was held in that case: "Where a manufacturer, for the purpose of presenting his goods to the market, has adopted a particular combination of features, in part old and in part new, he is entitled to protection against a palpable imitation. If a

manufacturer of candy puts it up in packages of a particular size and shape, with a word in red script letters upon the middle and ends of the wrappers, another person may be restrained from putting up packages in the same form and size with another word printed upon the middle of the wrappers in Roman letters, if it is found that the public is thereby deceived into believing that the defendant's goods are the plaintiff's goods, and that the resemblance is not accidental." Likewise it was held in Coats v. Merrick Thread Co., 149 U. S. 562 (13 Sup. Ct. 966, 37 L. ed. 847) : "Irrespective of the technical question of trade-mark, defendants have no right to dress their goods up in such manner as to deceive an intending purchaser, and induce him to believe he is buying those of the plaintiffs. Rival manufacturers may lawfully compete for the patronage of the public, but they have no right, by imitated devices, to beguile the public into buying their wares under the impression they are buying those of their rivals." And see Collins v. Paist, 14 F. (2d) 614: "It is so easy for the honest business man, who wishes to sell his goods upon their merits, to select from the entire material universe, which is before him, symbols, marks, and coverings which by no possibility can cause confusion between his goods and those of competitors, that the courts look with suspicion upon one who, in dressing his goods for the market, approaches so near to the dress of those of his business rival that the public may fail to distinguish between them. The law is not made for the protection of experts, but for the public—that vast multitude, which includes the ignorant, the unthinking, and the credulous, who, in making purchases, do not stop to analyze, but are governed by appearance and general impressions." Florence Mfg. Co. v. Dowd & Co., 178 Fed. 73, 101 C. C. A. 565.

"The duty is imposed upon every manufacturer or vendor to so distinguish the article he makes or the goods he sells from those of his rival as that neither its name nor its dress will probably deceive the public, or mislead the common buyer." Wrisley Co. v. Iowa Soap Co., 122 Fed. 796.

We are of the opinion that the principles ruled in the cases cited above are sound, and that the trial judge erred in not granting the injunction in toto. There are decisions holding to the contrary of the above, in outside jurisdictions; but we are of the opin-

ion that the foregoing and other similar cases contain the better view.

*Judgment reversed on the main bill of exceptions, and affirmed on the cross-bill. All the Justices concur.*